## Case No. 15,163.

### UNITED STATES v. FREEMAN.

[1 Woodb. & M. 45.] [1]

Circuit Court, D. Massachusetts. Oct. Term. 1845.

MARINE CORPS—DISBURSING OFFICER—RESPONSIBILITY FOR FUNDS—PAY AND ALLOWANCES.

1. If an advance of money is made to an officer of the marine corps, he becomes liable as a debtor for the amount, to be applied, and vouchers furnished as directed, or to return what is not thus accounted for; and he is not to be treated as a bailee of the money, and responsible for only ordinary care in respect to it.

2. If he deposits it in a bank, which afterwards fails, whether the bank was or was not a public depository, it does not exonerate him as a debtor without a special act of congress to that effect.

3. Where a captain in that corps acts as captain, and has charge of clothing, he is entitled to an allowance therefor: but while he acts as brevet lieutenant colonel, and is paid as such, he cannot, during the same period, receive either the pay or allowances attached to the duties of captain.

4. Such an officer, while in the command of a separate post, is entitled to double rations, if the post be one designated by the president as entitled to extra rations,—and a post so designated by the navy department, is presumed to be by direction of the president.

5. Additional brevet pay is not to be allowed to such an officer, at such a post, unless there be at it, at least, two organized companies of men with suitable officers, though the whole number of men present may average enough for two companies.

---

1 [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

This was an action of assumpsit for a balance appearing due on the books of the treasury, from the defendant to the United States, for money advanced to him as an officer in the marine corps, to be used in the Florida war, whither he was detached in 1836. There was an agreement by the counsel for the parties as to the facts, which were, in substance, as follows: That [William H.] Freeman received a draft from the paymaster of the corps, on the Commonwealth Bank in. Boston, for the purpose aforesaid, in May, 1836. for $2500. That he drew the money thereon, and had it deposited to his credit in the same bank, without any designation that it was public money, or belonged to him in his official capacity. That he drew out all of it except $222.67. That the bank failed in January, 1838, and when Freeman was called on to pay said balance, he offered a check on the bank for the amount. That the bank, at the time of his deposit, was one of the banks selected by the government for holding its funds; but not knowing that Freeman considered this deposit as public, it did not sue or recover from the bank any thing on this account. though it did for what appeared to be public deposits. The defendant relied on these facts to exonerate him from paying the balance. Another sum of $73.10 had been charged against Freeman, by the comptroller of the treasury, which the quartermaster of the marine corps had credited to him on his books, and which Freeman contended he did not owe. No evidence was offered showing the impropriety of said credit. On the other hand, the defendant claimed certain allowances, and pay, and rations, under the following facts: He was appointed captain in the marine corps July 17th, 1821, and was made a brevet lieutenant-colonel February 30th, 1832, to take rank from July 17th, 1831, and was appointed major in the line from June 30th, 1834. His first claim was for responsibility for arms and clothing as a captain, from July 17th, 1831, to June 30th, 1834, amounting to $354, at $10 per month. This claim had been duly presented to the treasury, and disallowed, on the ground that he received during that period pay in the grade of lieutenant-colonel, and not as a captain. His second claim was for $1669, for double rations, while in command of the Boston station, from June 30th. 1834, to April 1st, 1842. His third claim of $1013.93, was for brevet pay and emoluments, as lieutenant-colonel in command of said station, from June 30th, 1834, to April 1st, 1842. These last two claims had also been presented to the proper officer of the treasury, and disallowed.

Some of the facts in this case have before been agreed on, and the opinion of the supreme court rendered on them, as reported in [U. S. v. Freeman] 3 How. [44 U. S.] 556. But more facts are now added, and some new points raised. Colonel Freeman has since died, and it is agreed by the counsel for his representatives and the district attorney. that the various documents and regulations there referred to, constitute a part of this case with the others now annexed to it. All the other facts necessary to a full understanding of the case appear in the opinion of the court.

Mr. Rantoul, Dist. Atty., for the United States.

Mr. Aylwin, for defendant.

WOODBURY, Circuit Justice. The right of the government to recover the balance of the money advanced to the defendant, is the first question presented, and it seems well settled on principle. This was not a case of bailment of any specified article, to be kept, or to be used and then returned. In such cases, a borrower or bailee, unless a public carrier for hire, might not, as is argued for the defendant, be responsible for any loss, if he exercised ordinary care in keeping the property. Such care was probably exercised in this instance. Nor was the present transaction a mere fiduciary one, a trust of funds, to be kept, or invested, loaned out and returned, like that of guardians or administrators, as to the money of those they represent. In such cases only ordinary vigilance and prudence, in making loans or investments, are exacted. But in the present case, the advance was made in order to be expended, not invested, nor returned specifically. It was an advance, therefore, which created a debt or liability, to be extinguished by showing its proper expenditure, and repaying what was not thus expended. There was a promise implied in equity as well as law, to repay such amount as remained unexpended. Like the case of all other mere debtors, then, whether public or private, and whether liable on express or implied obligations, it constitutes no defence for the. debtors if they have unsafely deposited their money, or lost it by the insolvency of those in whom they confided. The danger of collusion, and fraud, and neglect, in any other view, is great, and to be avoided; and is as great under implied as under express liabilities of this character.

In U. S. v. Prescott. 3 How. [44 U. S.] 578, the court go to the full extent of these principles in the case of an express contract or bond by a collecting officer, or receiver, and did not exonerate him from liability for public money under facts indicating even a robbery. Hence, if Colonel Freeman had been a regular disbursing agent, he would doubtless come within the analogy of that case, and be held responsible; and we see no difference in the principle between that and the present case, regarding both as they are, not bailments, but debts. Some reliance has been placed on the fact, that this balance was deposited by him in a bank selected by the government for its collecting and disbursing officers. and it is inferred, by the counsel for the defendant, that such officers so depositing are

not answerable for losses by the insolvency of a public depository. Whether this would be the decision in such case, is not clear, and need not be decided here; though if held liable in law, when thus depositing officially, congress would probably consider such losers as entitled to equitable relief. But here Colonel Freeman was not an officer whose general duties were either to collect or disburse, and had no orders where to make his deposits; he did not make them in this case in any public capacity, and by such a course disabled the government, when it sued the bank, from knowing that this was public money, and regaining it under the indemnities and securities it held against the bank. His case is not so much like a bailment as that of Prescott's. We therefore think the defendant is liable for the $222.67.

For the other sum of $73.10, we see no reason to charge him again, he having been once credited for the amount by the proper officer, and no cause being shown why the amount has been recharged.

Our next inquiry must be in relation to the claims, made by the defendant in set-off. We think, that the first one, for responsibility and care of the clothing, ought to have been allowed under the ruling of the supreme court in this case, in [U. S. v. Freeman] 3 How. [44 U. S.] 556, if he had acted and been paid only as captain during the time. But it is admitted, that during the same period for services in which he makes this claim as captain, viz., from July 17th, 1831, to June 30th, 1834, he has already demanded of the government to consider him as acting in his brevet station as lieutenant-colonel, and to pay him, for doing duty as such, a higher compensation, and that this higher compensation has already been allowed to him. It seems to us, then, that he cannot equitably receive two compensations attached to different stations or commands for services performed only at one place and time. If he claims an allowance as only a captain in command of a company, or as attached merely to such a command, he should not have claimed an allowance during the same period as lieutenant-colonel, commanding more than a company, and doing duties, not of a captain, but of a higher grade. But, as he has insisted on the latter, and received extra pay as a lieutenant-colonel, doing duty as such by commanding more than a company during the period in which he now asks to be allowed extra compensation for duty as a captain, we think the two claims are inconsistent. And as that for extra pay has been granted, the other, founded on a different hypothesis as to the grade, extent and nature of his command during that time, must now be disallowed.

The second claim, which is for double rations, must be allowed or not, according as, during the period from June, 1834, to April, 1842, he was or was not in command of a separate post, where the president has directed that such rations shall be allowed. The claim is under the act of congress of March 16th, 1802, c. 9 (2 Stat. 132), in relation to the army, and which applies to the marine corps, by subsequent enactments. And the pertinent words in relation to it in that act are, "to the commanding officer of each separate post, such additional number of rations as the president of the United States shall from time to time direct, having respect to the special circumstances of each post." Id. § 5. It will be seen, that by the language of the act, both a separate post and the direction of the president are necessary to confer the right to double rations. Such, also, has been the decision in Parker v. U. S., 1 Pet. [26 U. S.] 293, 297. Colonel Freeman had the command of a separate post, but it does not appear that any allowance for extra rations was directed by the president there till June 30th, 1841. The only evidence of the last, even after that time, is an order to such effect, issued at that date by the navy department. We acquiesce in the opinion of the supreme court ([U. S. v. Freeman] 3 How. [44 U. S.] 556, 563) that such an order from the proper department is to be presumed to have been issued by the direction of the president himself. U. S. v. Eliason, 16 Pet. [41 U. S.] 291. 302; Parker v. U. S., 1 Pet. [26 U. S.] 293. This order, though not a part of the case as originally submitted, is now by agreement to be considered as in it, and entitles the defendant to those rations from July 30th, 1841, to April 1st, 1842, valued, it is believed, at about $130.

His last claim is for pay as a lieutenant-colonel by brevet beyond that of a major, and is limited to the period from June 30th, 1834, to April 1st, 1842. During a part of this time he was at the same separate post near Boston, and had under him a number of men, ranging from forty and fifty to one hundred and sixty or more, and averaging near the latter number at the close of each month. But it is not shown that he had over one company organized as such, or more than one captain. The act of April 16th, 1818, c. 64 (3 Stat. 427), on which the claim depends, requires that brevet officers, in order to receive pay as such, must be then "on duty, and having a command according to their brevet rank, and at no other time."

What then constitutes a command according to their brevet rank? By the army regulations of 1825, which governed this question till 1836 ([U. S. v. Freeman] 3 How. [44 U. S.] 564) it was provided that a lieutenant-colonel by brevet must be considered to "exercise a command equal to his brevet rank," when he commanded a battalion. We entertain an opinion, that whatever meaning may at times be affixed to the word "battalion," it must, by the spirit of this regulation and the laws connected with it, be construed to mean here, at least two organized compa-

nies, with their requisite officers as well as men. Any other construction would lead to daily fluctuations and uncertainty, as the number of men might change from fewer or more than forty-two and twenty-eight, the number fixed at different periods for one company. The reason of the rule would cease in a great measure, without also such organization and subordinate officers; as without the latter, the mere increase of men would add nothing to the expenses of the lieutenant-colonel's station or command in intercourse and civilities with the officers of the corps. A battalion, then, should consist, however large the number of men, of nothing short of two organized companies and their officers; and as it does not appear that these existed there at that time, he is not entitled to the additional pay from 1834 to 1836, under the regulation of 1825. In 1836 a new order was issued by the war department, requiring a still larger command for a brevet lieutenant-colonel, in order to entitle him to extra pay, viz., "four companies instead of two, or to command as lieutenant-colonel to a regiment." A like construction must be given to the word "company" here, in order to come within the spirit and reason of the allowance. It should be an organized company, and have a suitable number of officers as well as men. Hence, as there is no evidence in the case of there having been four such companies under the command of the defendant at the Boston station, between 1836 and 1841, he cannot receive any extra pay as a brevet lieutenant-colonel for his services at that station during that period. But it is stated, that while detached from that station in Florida, after the spring of 1836, Lieutenant Colonel Freeman was in the actual command there as lieutenant-colonel of an organized regiment, or, at least, of four companies of men. The particulars on that point are not given, but may be added to the case, and for whatever period he may have exercised such a command in Florida, and has heretofore been allowed only the pay of a major, we think he is entitled to the additional compensation of a lieutenant-colonel. But it must be an actual command by himself, equal to his rank.

Upon these principles let the judgment on the case be made up.

First charge the defendant with only the $222 67
Then deduct from this for double rations, to which he is entitled for parts of 1841 and 1842 ................ 130 00

This leaves to the United States.. $ 92 67

Allow him any sum found to be proper on the facts and principles stated, for services in Florida; and if it be less than the above amount, make up judgment for the balance against the defendant. If it be more, enter judgment generally for the defendant.